Your Honor, may it please the court, Van Arvanites, Evangelo Arvanites, on behalf of Frederic Emanuel Scott, I appear from the District of Montana, Great Falls Division. This is a habeas petition where a habeas was filed and a request for response was requested by Judge Lovell to the state, or to the government rather, and it was subsequently, the order was denied without a hearing. And I think that's why we are here today, is we're requesting that an evidentiary hearing to hear from Mr. Holden, who is an able trial attorney, as well as Mr. Scott, who is an experienced defendant, as we know from the record. Let me ask you, what do we do with the government's statement in its opposition to the motion, to the petition before Judge Lovell? He called for response, as you just said, and they responded. In their response, there's not a declaration, but as you pointed out, they state the government was not privy to these conversations, meaning the conversations between the petitioner and his counsel. However, the government's file does not reflect that a plea agreement was extended to the defendant prior to trial. What do we do with that? What does that mean? Well, you know, certainly I would assume there were conversations to the effect between Mr. Holden and the government, and perhaps even Mr. Sikora would have to be put on the stand as well to answer to that question. A lot of times, as we know and I know as a trial attorney, we talk a lot on the phone. I mean, that's how we get deals made. And Mr. Scott, as he stated, was told that there may be a deal on the table where they dismiss the 924C in return for cooperation, which is very normal, although at that time... Counsel? Yes, yes, sir, Judge. Counsel, Judge Fischer, just to clarify, you say the 924C, that's the gun charge, correct? Yes, sir. So he was offered in his account, they would drop the gun charge, but he would still be exposed to the drug charge, correct? Yes, sir. Okay, so, and my understanding is that his rationale of going to trial was that he had a 50-50 chance on beating the gun charge. Well, yeah, that is according to him as well in regard to the definition. That's his statement. Yes, sir. I'm just trying to understand the logic of turning down a certainty of dropping the gun charge and going to trial on a 50-50 chance where he was always facing the drug count. Why in the heck would he have gone to trial? Well, I think that question is kind of the foundation of why I think we need to hear from the attorney, because if the attorney told the client, look, we can win this gun charge. Now, as an attorney, you're not going to say 100%. Wait a minute, Counsel, Counsel, stop, stop. Yes, maybe his counsel said we can win the gun charge, but according to your client, the offer was to drop the gun charge. So what possible benefit could there have been going forward on trial to take a 50-50 chance that he would lose what the government, according to your client, he understood, was prepared to drop? The logic of it is escaping me. Well, because, again, it's a wonderful, I mean, it is a good question, because we don't know whether it was a discussion between the attorney and the prosecutor as, look, we may consider if he's willing to cooperate that we'll drop the gun charge or that the gun charge would be definitively dropped in a plea, because as Mr. Scott says in his pleadings as well, that he would have pled to the paper straight up also. So not only do we have several different statements by the client. We have a 50-50 coming from the client, a hearsay statement from the attorney regarding the attorney, but then we also have him saying, look, I would, if they were going to, even with the gun charge, I would have still pled possibly to the paper because of the benefit of a plea. But my attorney said, look, on this legal technicality, we could have won. And it's in his Rule 29 motion, I mean, it's all over the Rule 29 motion, where he is advocating this theory that my client is saying he advocated to him. So I don't think the client came up with it just on his own because Mr. Holden argued that in the 924C, or not the 924C, rather, the Rule 29 motion for judgment of acquittal. I mean, that was the focus of his argument. Sure, he also argued jurisdiction, which, unfortunately, and I have great respect for Mr. Holden, but a 924C has nothing to do with jurisdiction, as we know. That's a felon in possession issue, maybe, as an element. So it's on the record in his Rule 29. First he argued jurisdiction, which has nothing to do with it, and then he argued the case law, and he was prepared to even argue the cases and even distinguish those cases from the facts. So it is clear that he prepared for that issue. And I think, well, I would submit respectfully that that, I guess, bolsters the credibility of Mr. Scott's contention that it was an issue discussed. How much it was discussed, we don't know, and that's why I would submit respectfully that a hearing be given for that reason. I mean, I gather it's your position that an offer was on the table. That, it's hard to say because the client is kind of all over the place as to whether or not an offer was on the table or if it was kind of in discussion. Quid pro quo, you agreed to cooperate like everyone else did. I mean, it wasn't outside, it wasn't even in a vacuum. Everyone else cooperated and got a deal. So it was probably discussed between Mr. Sicoria and Jason Holden that, you know, maybe if he cooperates, we'll consider dropping the 924C, which is a huge, huge potential. But the client has to make the final decision, and he has to also rely on the attorney. But, you know, in the end, the client does have to make the final decision, and he did decide to go to trial for this. Mr. Arvanites, would you like to save a couple of minutes of your argument for rebuttal to hone your points in light of what the government says? I would certainly enjoy that. Thank you, Justice. Okay. We'll hear from the government. Appellee is Mr. Johnson. Good morning, Your Honor. By the way, I was remiss. I should have said to both of you, welcome on your trip from Montana. We really appreciate it. Thank you, Your Honor, and it's nice to be back. Leif Johnson for the United States, and may it please the Court. Judge Paez, I think your question gets to the critical issue here. There needs to be ñ the question is whether the district court's finding that there was no plea agreement offer is critical to whether or not there was a Sixth Amendment inquiry that needs to be made. Under the Lafler case, if there was no plea offer made, then the Sixth Amendment inquiry never occurs, and we don't have a critical stage until trial. So that's, I think, the critical factor at the beginning here. And we think that the record adequately supports the district court's finding for several reasons. Of course, the judge asked the government to respond, and we did. And the government made the statement that you've read, Judge Paez, the statement that there's nothing in the record that reflects an agreement was extended. Well, I noted that this is very carefully written. Yes. That a plea agreement ñ the file does not reflect that a plea agreement was extended. It didn't say that there were ñ Yes. There were no discussions of a possible offer. And I think there's some importance to that, Your Honor, and here's what it is. Number one, clearly, counsel bantered back and forth about whether or not plea negotiations should occur and whether the government should extend a real offer. But there isn't a real offer until the prosecutor has authority and until he has approval to go ahead. So the prosecutor may have bantered back and forth with defense counsel about whether or not they would drop count one in exchange for a count two. But in any event, no formal offer that the government was willing to honor was actually extended. And the district court's finding on that point is supported in the record because it not only would show up in the government's file here. All of our plea agreements are approved by the criminal chief, so it would show up in the file. Number one, I think that's what the government was ñ the point he was trying to make here. But number two, it would have shown up in the attorney fee records as well. I mean, there would have been, if there was all of these other references to the various issues that the defense was considering, it would have come up there as well. And I think the district court's finding on that was not clearly erroneous. The third factor to take into consideration in that matter is what the petitioner says himself about this offer. In his affidavit, he refers to the government as willing to make an agreement to dismiss count one in exchange for a plea in count two, wherein he would get to basically receive a sentence of 24 months. That in itself is absurd. His guideline on count two was 87 to 108 months. The idea that the government would give up count one in exchange for a count two plea and a sentence of 24 months just doesn't square with the record here. Finally, Your Honor, I think you can consider all of the factors and the ones that Judge Fisher mentioned about the petition that make the defendant's statement that there was an offer by the government incredible. He says, I didn't take the plea offer because I had a defense to count one. Well, that doesn't make sense because he obviously would have been in a better position had he taken his three points. The question was, what was he going to do about count two? He alleges that this case would have gone away if we had presented our inoperability defense. They didn't really present that to the jury, and nothing in that defense would have helped the defendant get by count two. So the petition taken as a whole was not credible, and that lends credence to the district court's finding that there really was no offer by the government in the first place, a real bona fide offer that the government was willing to honor. Finally, I would like to just briefly address one thing that Mr. Arvanites mentioned. He said that the defendant in his petition also mentioned that he would have pled straight up and that he was talked out of it. That's no longer an issue here. The defendant here has served his term. He's on supervised release, and because of that, the only injury that can be redressed in this proceeding is whether he gets five years of supervised release rather than three, and pleading straight up to the indictment wouldn't have addressed that injury. So our position is that the court's finding on whether a plea agreement was offered is critical, and beyond that, if the court finds that that was not clearly erroneous, there is no Sixth Amendment inquiry that needs to be made. If the court has no further questions, I will cede the remainder of my time. Judge Fischer? No, I'm fine. Thank you. No questions here. Thank you. Okay, Mr. Arvanites? Thank you. If you'd like to make your rebuttal, please. Yeah, I enjoyed, as a trial attorney, I don't get to do this often. This is my first time on a 2255. I'm here for the esteemed David Ness. You're doing a great job, so congratulations. I hope I don't step in the puddle. But when a trial attorney doesn't present a legal issue like Mr. Holden presented in his Rule 29 motion, that happens all the time. I mean, there can be a legal issue, like in this case, whether the firearm was operable. You may not approach the jury in closing with that issue. He approached it in Rule 29 to get a judgment of acquittal on that count, and that's usually the proper thing to do unless you have a bench trial on stipulated facts, which would have perhaps even given him the opening to get a two-level decrease on the drug charge for acceptance of responsibility under an exception in the guidelines. So as a trial lawyer, that's just a matter of strategy. Hold on one second. Yes, sir. It looks to me like the clock wasn't started. Oh. So our court personnel are trying to help you out. Well. You don't have to use all that time. I can't really estimate what you should have, but if you can do it in a minute, that's fine. Yes. Yes, sir, I can. The whole discussion that Mr. Johnson brought up about was there a discussion, was there not, you know, the definitive answer of the prosecution having to go through its red tape to get a plea, those are the kind of things we can find out if we have a hearing, an evidentiary hearing on this, to find out from Mr. Holden, perhaps even Mr. Sicoria, what the discussions were. Because a lot of times, unless the client, unless the defense attorney says, we're going to go, we really want this plea, the government's not going to waste their time through the red tape they have to get the okay from the criminal division head. So if, again, you go back to the ineffectiveness issue, if his legal interpretation of whether a firearm was operable or not was incorrect and the client used that as a reason to, for whatever reason, go to trial, then that needs to be discussed. There needs to be some sort of record on that. I have about ten seconds left. And finally, there is a big deal with this count. If we can redress this, he has done his time, but the court can reopen the plea agreement stage, dismiss the five-year, potentially the five-year gun charge on 924C, then if he gets violated on supervised release, which is on paper right now, he would be, the BOP, he would get a lot more benefit. He'd get accepted in the RDAP program. He could be accepted in a camp because there's low criminal history. So that count is a big deal on his record right now, even though he's finished his time. And I have finished my time. Thank you. Thank you. Thank you. We thank both counsel for their fine arguments. And the case of U.S.P. Scott shall be submitted.
judges: Fisher, Gould, Paez